# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**KATHLEEN NGUYEN**                                                                        **CIVIL ACTION**

**VERSUS**

**HARTFORD UNDERWRITERS**                                 **NO. 17-01351-BAJ-SDJ**
**INSURANCE COMPANY, ET AL.**

## RULING AND ORDER

Before the Court is Plaintiff's **Motion for Partial Summary Judgment (Doc. 20)**. Defendant opposes the Motion (Doc. 27), and Plaintiff has submitted a reply to Defendant's opposition, (Doc. 29). On January 13, 2021, the parties presented oral argument, after which the Court took the matter under advisement.

For the reasons stated herein, Plaintiff's Motion is **GRANTED**.

## I.    RELEVANT BACKGROUND

### A. Overview

This is a flood insurance dispute, one of many in this District flowing from the historic Baton Rouge flood of August 2016. Defendant is an authorized insurer participating in the National Flood Insurance Program's (NFIP) Write-Your-Own (WYO) Program. Plaintiff is the insured, having purchased a Standard Flood Insurance Policy (SFIP) from Defendant in March 2017. At issue is whether Defendant must pay to replace Plaintiff's exterior wall sheathing after it contacted floodwater.

Exterior sheathing is building material that is nailed or screwed to the exterior frame of a house—essentially, the home's external shell. It comes in different forms—

1

some more resistant to water damage than others—and rarely attracts attention because typically it is covered from view with siding or some other exterior wall finish.

Here, however, sheathing takes centerstage due to a disagreement regarding what proof of loss is required before a flood insurer must pay to replace it. Plaintiff insists that the SFIP and applicable Federal Emergency Management Agency (FEMA) guidelines establish that certain types of sheathing—including hers—are irretrievably damaged upon proof of "mere contact with floodwater." Defendant responds that regardless of type, an insurer must only replace sheathing after the insured proves "evidence of physical change," which, in Defendant's view, means obvious and apparent damage attributable to floodwater. The question ultimately boils down to contract interpretation, and whether the Court may reference the NFIP Claims Manual—a FEMA publication expressly intended "to improve clarity of claims guidance to WYOs … so that policyholders experience consistent and reliable service," (Doc. 20-4 at 9)—when determining the scope of coverage under the SFIP.

### B. Summary Judgment Evidence

The facts are undisputed. Defendant issued Plaintiff a SFIP (No. 87042037882016) protecting Plaintiff's home, with policy limits of $250,000 for building coverage, subject to a $1,250 deductible. On August 16, 2016, during the policy period, Plaintiff reported a loss to her home due to the historic floods that devastated large swaths of East Baton Rouge Parish and surrounding parishes. Defendant acknowledged Plaintiff's claim and assigned it to an independent adjuster.

On August 20, 2016, the adjuster inspected and photographed Plaintiff's property, documenting that Plaintiff's home was inundated with more than two feet

2

of floodwater for multiple days. At the time of the inspection, Plaintiff had already begun removing interior baseboards, drywall, and insulation, including from the perimeter walls, allowing the adjuster to observe and photograph Plaintiff's exterior sheathing. Notably, Plaintiff's sheathing is "Class 1" fiberboard,[1] which, according to FEMA's guidance, puts it among building materials that can *only* be "used in spaces with conditions of complete dryness." (Doc. 20-15 at 6, 9). According to FEMA, Class 1 fiberboard is "[n]ot resistant" to water or moisture of any kind, and expressly "cannot survive the wetting and drying associated with floods." (*Id.*).[2] Nonetheless, the adjustor's report does not indicate any delamination, swelling, crumbling, or other evidence of obvious and apparent physical damage to Plaintiff's fiberboard sheathing.

Based on her inspection, the adjuster estimated the replacement cost value (RCV) of damages to Plaintiff's home at $113,289.63. On November 17, 2016, Defendant reviewed and verified the adjuster's report and approved payment in the amount of $113,289.63. This initial payment did *not* include reimbursement for sheathing.

On July 21, 2017, Plaintiff submitted a supplemental Proof of Loss seeking payment of the $250,000 policy limit, supported by a 45-page, line-by-line estimate showing a RCV of $289,016.02. Among Plaintiff's line-items are six entries

---

[1] The NFIP Claims Manual and FEMA Technical Bulletin 2 ("TB2")—each of which will be discussed more fully below—clarify that fiberboard comes in two classes: Class 1 and Class 2. (*See* Doc. 20-4 at 12; Doc. 20-15 at 6, 9).

[2] In contrast, Class 2 fiberboard is slightly more versatile than Class 1 fiberboard due to its external coating, and may be "used in predominately dry spaces that may be subject to occasional water vapor and/or slight seepage." (Doc. 20-15 at 6, 9). Still, however, Class 2 fiberboard also "cannot survive the wetting and drying associated with floods." (*Id.*).

corresponding to removal and replacement of exterior sheathing, at a total cost of $4,823.10. (*See* Doc. 27-13 at pp. 2, 39, 41). Plaintiff's July 21 Proof of Loss did not provide any additional evidence of physical damage to the exterior sheathing.

On September 3, 2017, Defendant denied Plaintiff's claim for additional payment, citing "no documentation to support any further payment." (Doc. 20-13 at p. 1). Defendant concedes that, to this day, it has never reimbursed Plaintiff for sheathing, and Plaintiff has not made any repairs to the sheathing at issue. (Doc. 28 at ¶¶ 9-10).

### C. Procedural History

On October 24, 2017, Plaintiff filed this action, alleging breach of contract based on Defendant's denial of her claim for payment of the policy limit. (Doc. 1).

On March 6, 2018, Defendant filed its Answer. Notably, among its Affirmative Defenses, Defendant cites the NFIP Claims Manual and applicable FEMA guidance bulletins multiple times. Defendant's Answer states in no uncertain terms that the Claims Manual "governs claim adjustment aspects of Plaintiff's SFIP," and that Defendant "shall abide by" FEMA Bulletins:

> **FEMA BULLETINS:** Per the *Arrangement* (Arts. I(5) and (6), II(A)(2) and (G)), Foremost shall abide by written guidance published by FEMA. *See,* https://nfip-iservice.com/nfip_docs.html.
>
> …
>
> **FEMA ADJUSTER CLAIMS MANUAL:** Foremost asserts that the FEMA Adjuster Claims Manual, promulgated by FEMA under authority of the U.S. Congress, governs claim adjustment aspects of Plaintiff's SFIP. *See,* https://www.fema.gov/media-library/assets/documents/2675.

(Doc. 11 at 17).

Additionally, Defendant's Answer expressly concedes that these materials must be read *in pari materia* with the SFIP:

> The question of whether the Insured is entitled to additional sums under the SFIP, and if so, how much, is strictly governed by the policy's Declarations Page, and all of the policy's terms and conditions as contained in the SFIP at 44 C.F.R. Pt. 61, App. A(1), *in pari materia* with all applicable provisions of the Code of Federal Regulations, the NFIA itself and FEMA's regulations, Bulletins, and Claims Manual.

(Doc. 11 at 8).

On September 18, 2020, Plaintiff filed the instant Motion for Partial Summary Judgment. (Doc. 20). Plaintiff's Motion focuses solely on exterior sheathing and seeks judgment on two issues: first, that she is entitled to reimbursement of the cost of replacing her sheathing based exclusively upon proof that floodwater contacted the sheathing; and second, that Defendant improperly denied her claim to additional reimbursement based on her failure to submit proof of how she spent her initial payment. As to each issue, Plaintiff argues that the SFIP is ambiguous, and that the NFIP Claims Manual clears up the confusion, establishing that fiberboard sheathing is compensable upon proof of "mere contact with floodwater," (Doc. 20-2 at p. 15), and that an insured "who has not completed repairs and is requesting additional payment is not required to prove how they spent funds previously paid on the same claim." (*Id.* at p. 18).

Defendant objects, and disagrees with Plaintiff's interpretation of the SFIP. Initially, Defendant raises two procedural objections: first, that Plaintiff seeks an impermissible "advisory opinion"; or, alternatively, that Plaintiff lacks standing to compel Defendant to comply with the terms set forth in the Claims Manual. (Doc. 27

5

at pp. 4-9). Next, Defendant insists that even if the Court reaches the merits, Plaintiff's arguments fail because the SFIP unambiguously requires "evidence of physical change" to Plaintiff's sheathing before it is compensable—i.e., obvious and apparent "physical damage." (*Id.* at 23). Defendant asserts that Plaintiff has failed to provide any such evidence, and therefore must lose. (*Id.* at 31).

The Court addresses the parties' arguments below, beginning with Defendant's procedural objections.

## II.  LAW AND ANALYSIS

### A. Procedural Objections

#### 1. Plaintiff does not seek an advisory opinion

Off the top, Defendant insists that Plaintiff's Motion should be denied as an inappropriate demand for an advisory opinion. (Doc. 27 at pp. 4-6). In support, Defendant cites cases where courts declined to resolve insurance disputes predicated on assumptions or hypothetical future events.[3] (*Id.*). Plaintiff responds that Defendant's authorities are easily distinguishable because the dispute here is *not* hypothetical: "[Plaintiff's] sheathing is damaged according to FEMA guidance, and

---

[3] Specifically, Defendant cites two cases: *Tribute Real Estate, LLC v. United Artist Theatre Circuit, Inc.*, No. 10-cv-106-JJB, 2012 WL 1590042, at *1 (M.D. La. May 4, 2012), and *Paragon Asset Co. Ltd v. Gulf Copper & Mfg. Corp.*, No. 17-cv-00203, 2020 WL 1892953, at *1 (S.D. Tex. Feb. 11, 2020). *Tribute Real Estate* rejected the plaintiff's request for a judgment interpreting an insurance policy based on a hypothetical future loss. 2012 WL 1590042, at *1 (declining to issue declaration that "in the event of a covered loss," Defendant would be obligated to make a claim under the insurance policy and to contribute the insurance proceeds towards the cost of repairs). *Paragon Asset Company* rejected a limitation plaintiff's attempt to cap its liability based on an assumption that the damages at issue related to "scrap assets" incapable of being repaired. 2020 WL 1892953, at *1. In each case, the court determined that the plaintiff's proposed relief amounted to an impermissible advisory opinion.

whether … the NFIP Claims Manual applies to [her] claim for damaged sheathing is ripe for consideration." (Doc. 29 at p. 6).

To be sure, the Court lacks authority to "render an advisory opinion on hypothetical or abstract facts." *Hodgson v. H. Morgan Daniel Seafoods, Inc.*, 433 F.2d 918, 920 (5th Cir. 1970). This rule "ensure[s] that federal courts determine specific disputes between parties, rather than hypothetical legal questions, and in doing so, conserve judicial resources." *Texas v. Travis Cty.*, 272 F. Supp. 3d 973, 980 (W.D. Tex. 2017) (citing *Flast v. Cohen*, 392 U.S. 83, 96-97 (1968)), *aff'd*, 910 F.3d 809 (5th Cir. 2018). Here, however, Plaintiff's claim is plainly not hypothetical. The uncontroverted facts establish that she is insured against flood damage according to the terms of the SFIP issued by Defendant; her home was flooded in August 2016, during the policy period; floodwater contacted Plaintiff's exterior fiberboard sheathing but did not cause observable damage; Defendant's original November 17, 2016 payment did not include reimbursement for sheathing; Plaintiff's July 21, 2017 supplemental Proof of Loss specifically requested reimbursement for sheathing (to the tune of $4,823.10); and Defendant has subsequently denied Plaintiff's request for additional payment based on Plaintiff's failure to show how she spent her prior payment.

The issue at hand is whether, based on these concrete facts, the SFIP allows Plaintiff to recover the cost of her sheathing. Resolving this issue requires weighing competing interpretations of the SFIP *only*, not consideration of any hypotheticals or assumptions. On this record, the Court may not avoid its duty to decide the issue at hand. *See Comer v. Murphy Oil USA*, 607 F.3d 1049, 1060–61 (5th Cir. 2010) (Dennis,

7

J., *dissenting*) ("Just as courts have an 'absolute duty ... to hear and decide cases within their jurisdiction,' litigants have a corresponding due process right to have their cases decided when they are properly before the federal courts." (quoting *United States v. Will*, 449 U.S. 200, 215 (1980)).[4]

### 2. Plaintiff has standing and does not seek to enforce FEMA's rights under the Arrangement

Next, Defendant asserts that Plaintiff lacks "standing" to pursue her summary judgment motion, or, alternatively, lacks authority "to stand in FEMA's shoes to enforce provisions of the NFIP Claims Manual." (Doc. 27 at p. 8). Defendant reasons (1) its obligations as a WYO Program carrier—including its obligations to follow the Claims Manual—are governed by its authorizing contract with FEMA (the "Arrangement"); (2) Defendant and FEMA are the only parties to the Arrangement, and the only parties capable of enforcing its obligations; and, therefore, (3) Plaintiff cannot complain that Defendant has failed to reimburse the cost of her sheathing according to the Claims Manual's guidance. (Doc. 27 at 12-14). Plaintiff counters that she is not attempting to enforce Defendant's obligations under the Arrangement— but merely seeks to recover losses attributable to Defendant's alleged breach of the SFIP—and that she references the Claims Manual and FEMA Bulletins because

---

[4] Strangely, Defendant also contends that Plaintiff's Motion amounts to "piecemeal litigation." (*See* Doc. 27 at p. 11). There is no plausible basis for this contention, and nothing objectionable about Plaintiff's request for judgment is featured here. Rule 56 expressly permits Plaintiff to seek summary judgment on any "part" of her claim; Plaintiff's Motion is her first (and only) motion for summary judgment; and a judgment on the merits will materially advance the litigation. *See Louisiana CNI, L.L.C. v. Landmark Ins. Co.*, No. CV 06-112-JJB, 2007 WL 9706513, at *5 (M.D. La. July 31, 2007) ("Courts routinely enter partial summary judgments.").

these materials are intended to be read in conjunction with the SFIP when determining compensable loss. (Doc. 29 at 7-8).

Here, again, Defendant's objections miss the mark. First, Article III standing is obviously satisfied when, as here, Plaintiff complains that she is owed additional money under the SFIP, which Defendant has failed to pay due to an alleged breach, and a favorable decision will redress Plaintiff's alleged loss. *See Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013) ("Article III standing requires a plaintiff to show: (1) an injury in fact (2) that is fairly traceable to the actions of the defendant and (3) that likely will be redressed by a favorable decision." (quotation marks omitted)).

Likewise, the Court is unpersuaded that Plaintiff is seeking to enforce FEMA's rights under the Arrangement simply because she references the Claims Manual in support of her interpretation of the SFIP.[5] Plaintiff's complaint asserts just one claim:

---

[5] Again, Defendant relies on inapposite authorities to support its argument that "Plaintiff is asking the Court to create a 'right of action' to stand in FEMA's shoes to enforce provisions of the NFIP Claims Manual." (Doc. 27 at 13). Defendant quotes extensively from *Eodice v. Selective Ins. Co. of Am.*, No. 08-cv-151, 2010 WL 11693193 (D.N.J. Feb. 8, 2010), where the U.S. District Court for the District of New Jersey rejected the plaintiff's attempt to pursue an *extra*-contractual claim of "bad faith" based exclusively on the insurer's conduct *outside* the scope of its obligations under the SFIP. *Id.* at *6. Observing that the plaintiff failed to provide any authority "for the proposition that an insured may bring an action for damages premised solely on a WYO insurer's failure to adhere to the requirements of the Arrangement that governs the relationship between FEMA and WYO insurers," the Court refused "to infer a private right of action for them to enforce the terms of the Arrangement against a WYO insurer." *Id.* (Notably, in *Eodice*, the plaintiff's breach of contract claim failed at summary judgment because Plaintiff did not satisfy the SFIP's mandatory preconditions for filing suit. No such impediment exists here).

*Eodice*, and Defendant's additional authorities, stand for the basic proposition that SFIP policy-holders generally may not pursue *extra*-contractual claims arising from a WYO insurer's handling of a flood claim under a SFIP. *See id.*; *see also Psychiatric Sols., Inc. v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 652 F. App'x 122, 125 (3d Cir. 2016); *Gunter v. Farmers Ins. Co.*, 736 F.3d 768, 773 (8th Cir. 2013); *Wright v. Allstate Ins. Co.*, 500 F.3d 390, 394 (5th Cir.

breach of the SFIP based on Defendant's failure to pay "damages directly caused to the Property by or from the Flood." (Doc. 1 at ¶ 33). Plaintiff's summary judgment motion focuses on one part of that claim: Defendant's failure to reimburse for sheathing. Unquestionably, Plaintiff may pursue her breach of contract claim against Defendant. *Gunter v. Farmers Ins. Co.*, 736 F.3d 768, 773 (8th Cir. 2013) ("The NFIP specifically allows a policyholder to sue a WYO insurer for breach of contract[.]" (citing 42 U.S.C. §§ 4053, 4072)).

Further, it is entirely appropriate (indeed, mandatory) for Plaintiff to support her interpretation of the SFIP with reference to the Claims Manual. FEMA's regulations dictate the terms and conditions of the SFIP, and the same regulations incorporate the Claims Manual by reference. *White Hall on MS River, LLC v. Hartford Ins. Co. of the Midwest*, No. 13-cv-218, 2015 WL 1540436, at *2 (S.D. Miss. Apr. 7, 2015) ("The FEMA Claims Manual … is incorporated by reference into the FEMA regulations." (quoting *Suopys v. Omaha Prop. & Cas.*, 404 F.3d 805, 811 (3d Cir. 2005)). Thus, not surprisingly, Courts read  the SFIP *in pari materia* with the Claims Manual to resolve coverage disputes. *E.g.*, *Westmoreland v. Fid. Nat. Indem. Ins. Co.*, No. 13-cv-564, 2015 WL 3456634, at *3 (M.D. La. May 29, 2015) (deGravelles, J.) (reading the Claims Manual *in pari materia* with the SFIP to resolve scope of

2007); *Scritchfield v. Mut. of Omaha Ins. Co.*, 341 F. Supp. 2d 675, 678 (E.D. Tex. 2004); *Lopez v. State Farm Gen. Ins. Co.*, No. 13-cv-6029, 2014 WL 3894647, at *5 (E.D. La. Aug. 8, 2014); *Fisher v. Beers*, No. 13-cv-6632, 2014 WL 3497572, at *2 (E.D. La. July 14, 2014); *Howell-Douglas v. Fid. Nat. Indem. Ins. Co.*, 24 F. Supp. 3d 579, 580 (E.D. La. 2014); *Dickerson v. State Farm Fire & Cas. Co.*, No. 06-cv-5181, 2007 WL 1537631, at *2 (E.D. La. May 23, 2007). A different situation altogether is presented here, where Plaintiff is pursuing a standard breach of contract claim based on the obligations set forth in the SFIP.

coverage dispute); *Davis v. Nationwide Mut. Fire Ins. Co.*, 811 F. Supp. 2d 1240, 1248 n.8 (E.D. Va. 2011) (referencing the Claims Manual to clarify the SFIP's definition of "Post–FIRM Building").

Additionally, it is beyond strange to ignore the Claims Manual and relevant FEMA Bulletins when, as here, the Defendant specifically invokes these materials as *affirmative defenses* to Plaintiff's claim to additional payment, stating that the Claims Manual "governs claim adjustment aspects of Plaintiff's SFIP," that Defendant "shall abide by" FEMA Bulletins, and that coverage under the SFIP is determined "by the policy's Declarations Page, and all of the policy's terms and conditions as contained in the SFIP … , *in pari materia* with all applicable provisions of the Code of Federal Regulations, the NFIA itself and FEMA's regulations, Bulletins, and Claims Manual." (Doc. 11 at 8, 17).[6]

## B. Merits

To recall, Plaintiff seeks summary judgment on two issues: first, that she is entitled to reimbursement of the cost of replacing her sheathing based exclusively upon proof that floodwater contacted the sheathing; and second, that Defendant

---

[6] At oral argument, the Court questioned Defendant regarding its obvious change of position since filing its Answer. Counsel responded that Defendant's positions were not contradictory because Defendant did not anticipate this particular dispute when it filed its Answer. This explanation is hardly convincing. Rather, it appears Defendant invokes the Claims Manual and FEMA Bulletins when beneficial or convenient, but objects when Plaintiff does the same. Defendant is reminded that in the law, as in life, "what is sauce for the goose is normally sauce for the gander." *Heffernan v. City of Paterson, N.J.*, 136 S. Ct. 1412, 1418 (2016). Here, the Court determines that the normal goose/gander rule applies, and that these materials inform its analysis of Plaintiff's claim to additional compensation, just as they would inform the Court's analysis of Defendant's defenses against such a claim.

improperly denied her claim to additional reimbursement based on her failure to submit proof of how she spent her initial payment.. Each issue requires an interpretation of the SFIP.

### 1. Summary Judgment Standard

The Court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant bears its burden of showing that there is no genuine issue of fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the nonmovant must identify "specific facts showing that there is a *genuine issue for trial*," *id.* (emphasis in original), and cannot meet its burden with "conclusory allegations," "unsubstantiated assertions," or "by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

When ruling on motions for summary judgment, the Court views all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Id.*

### 2. Construction and Interpretation of the SFIP

The flood insurance policy at issue is a SFIP, administered pursuant to the NFIP. The SFIP and all disputes arising from claims under it are governed by FEMA flood insurance regulations and federal common law. 44 C.F.R. Pt. 61, App. A(1), Art. IX. "The FEMA Claims Manual … is incorporated by reference into the FEMA

12

regulations." *White Hall on MS River, LLC*, 2015 WL 1540436, at *2. When addressing coverage disputes, the SFIP is read *in pari materia* with the FEMA Claims Manual. *Westmoreland*, 2015 WL 3456634, at *3.

Additionally, the scope of coverage under the SFIP is subject to interpretation by the Federal Insurance Administrator. 44 C.F.R. 61.4. And "FEMA's interpretation of its own regulations is given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *Worthen v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 463 Fed. Appx. 422, 426 (5th Cir. 2012) (quoting *Stinson v. United States*, 508 U.S. 36, 45 (1993) (internal citation and quotation omitted)). …

While federal common law governs, the Fifth Circuit has applied "general principles of state insurance law" to aid the interpretation of the SFIP. These principles include:

> (1) if the language of a policy is clear and unambiguous, it is accorded its natural meaning; (2) if the meaning of a policy provision is susceptible to different constructions, the one most favorable to the insured prevails; (3) insurance contracts are to be reasonably construed in accordance with the objective and intent of the parties; (4) in determining the most reasonable construction of contested provisions, the court may draw from the provisions, the policy as a whole, and the apparent objectives of the parties in entering the contract; and (5) in the end, if the meaning of the policy terms remains unclear, the policy is generally construed in the insured's favor to promote the policy's objective of providing coverage.

*Worthen*, 463 Fed. Appx. at 425–26 (citing *Hanover Bldg. Materials, Inc. v. Guiffrida*, 748 F.2d 1011, 1013 (5th Cir. 1984)).

Finally, the Court is guided by "the requirement that a policy of insurance issued pursuant to a federal program must be strictly construed and enforced." *Monistere v. State Farm Fire & Cas. Co.*, 559 F.3d 390, 394 (5th Cir. 2009) (quotation

marks and alterations omitted).

> Because insurance companies act as "fiscal agents" of the government under the National Flood Insurance Program, all policy awards deplete federally allocated funds. *In re Estate of Lee*, 812 F.2d 253, 256 (5th Cir. 1987). Therefore, "'not even the temptations of a hard case' will provide a basis for ordering recovery contrary to the terms of a regulation, for to do so would disregard 'the duty of all courts to observe the conditions defined by Congress for charging the public treasury.'" *Forman v. Fed. Emergency Mgmt. Agency*, 138 F.3d 543, 545 (quoting *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 420 (1990)).

*Id.*

### 3. Under the SFIP, Plaintiff's sheathing was damaged upon contact with floodwaters

The first issue is whether the SFIP allows Plaintiff to recover the cost of replacing her sheathing based exclusively upon proof of mere contact with floodwater. Answering this question requires an analysis of the SFIP's scope of coverage provisions, which may be found at Articles I (Agreement) and III (Property Covered), and the SFIP's definition of "direct physical loss by or from flood," which may be found at Article II (Definitions).

### a. Disputed SFIP Provisions[7]

In relevant part, the disputed provisions read as follows:

**SFIP Article I (Agreement):**

We will pay you for direct physical loss by or from flood to your insured property if you:

1. Have paid the correct premium;

2. Comply with all terms and conditions of this policy; and

---

[7] The SFIP appears at Appendix A(1) to Title 44, Part 61 of the Code of Federal Regulations. 44 C.F.R. Pt. 61, App. A(1).

3. Have furnished accurate information and statements.

We have the right to review the information you give us at any time and to revise your policy based on our review.

**SFIP Article III (Property Covered):**

We insure against direct physical loss by or from flood to:

1. The dwelling at the described location[.]

**SFIP Article II (Definitions):**

12. Direct Physical Loss By or From Flood. Loss or damage to insured property, directly caused by a flood. There must be evidence of physical changes to the property.

### b. Arguments and analysis

The only dispute is what proof of loss is required before Defendant must compensate Plaintiff for sheathing.[8] Not surprisingly, the SFIP itself does not address sheathing directly: it is written in general terms, and applicable to various forms of real and personal property. By contrast, the Claims Manual addresses sheathing expressly, providing specific guidance regarding whether and when an insurer must pay for sheathing.

The first issue, then, is whether the Court may reference the Claims Manual, and benefit from its guidance. Plaintiff argues that the Claims Manual is fair game because the SFIP is ambiguous regarding what proof of loss is required for sheathing. Defendant argues that the Claims Manual is off limits because the SFIP unambiguously requires proof of obvious and apparent damage before an insurer is

---

[8] The Parties agree that sheathing is a component of Plaintiff's "dwelling," and, as such, is compensable, *provided* that Plaintiff has satisfied the SFIP's prerequisite conditions for payment. Further, Defendant concedes that Plaintiff has otherwise satisfied all prerequisite conditions for payment.

required to pay for sheathing.

As an initial matter, the Court is not convinced it must find ambiguity in the SFIP before referencing the Claims Manual. SFIP Article IX (What Law Governs) provides, in relevant part, that claim-related disputes are governed by FEMA flood insurance regulations. The Claims Manual is incorporated by reference into the FEMA regulations, *White Hall on MS River, LLC*, 2015 WL 1540436, at *2, and, therefore, carries the full force and effect of law, *Batterton v. Francis*, 432 U.S. 416, 425 n.9 (1977). On this basis, courts read the SFIP "*in pari materia*"[9] with the Claims Manual. *E.g.*, *Westmoreland*, 2015 WL 3456634, at *3; *Davis*, 811 F. Supp. 2d at 1248 n.8. Strictly speaking, this analysis may occur absent an initial determination of ambiguity in the SFIP. *E.g.*, *Westmoreland*, 2015 WL 3456634, at *3 (construing the SFIP *in pari materia* with the Claims manual without first determining that the SFIP is ambiguous).

In any event, the SFIP's definition of "Direct Physical Loss By or From Flood" *is* ambiguous for purposes of this dispute. Critically, "Direct Physical Loss By or From Flood Plaintiff" requires "evidence of physical changes to the property." Yet, the SFIP does not define, or otherwise elaborate on, the embedded term "physical changes." In Defendant's view, "physical changes" means obvious and apparent damage—or "proved damage"—to any given building component, including sheathing. (Doc. 27 at

---

[9] The U.S. Supreme Court instructs that "all acts *in pari materia* are to be taken together, as if they were one law." *United States v. Stewart*, 311 U.S. 60, 64 (1940) (quoting *United States v. Freeman*, 44 U.S. 556, 564 (1845)); *see also* BLACK'S LAW DICTIONARY (11th ed. 2019) (explaining "that statutes that are *in pari materia* may be construed together, so that inconsistencies in one statute may be resolved by looking at another statute on the same subject.").

31).[10] But "physical changes" is *not* synonymous with obvious and apparent damage. Indeed, plain English dictates that physical change occurs when something that was once dry becomes wet. This interpretation, however, would create compensable claims for *all* building materials that contact floodwater, even materials that withstand inundation. To avoid this absurd (and costly) result, the Court looks to the Claims Manual for clarification regarding whether and then sheathing is compensable.

As noted by Plaintiff, the NFIP Claims Manual speaks directly to the point. In relevant part, Claims Manual Section 30.2 provides guidance for "Determining Coverage of Damage to Perimeter Wall Sheathing," and states:

> FEMA published Technical Bulletin 2- Flood Damage-Resistant Materials Requirements for Buildings Located in Special Flood Hazard

---

[10] Defendant argues throughout its opposition that Plaintiff's proposed interpretation of the SFIP, which would require only proof of contact with floodwater to recover for damaged sheathing, is inconsistent with federal statutes authorizing the NFIP, specifically 42 U.S.C. §§ 4019 and 4072. The Court pauses briefly to address this point.

In relevant part, Section 4019 states:

> The Administrator is authorized to prescribe regulations establishing the general method or methods by which proved and approved claims for losses may be adjusted and paid for any damage to or loss of property which is covered by flood insurance made available under the provisions of this chapter.

42 U.S.C. § 4019(a). In turn, Section 4072 states: "the Administrator shall be authorized to adjust and make payment of any claims for proved and approved losses covered by flood insurance." 42 U.S.C. § 4072.

Based on these sections, Defendant insists that loss under the SFIP must necessarily require proof of physical change, thus categorically prohibiting an insured from proving loss based solely on proof of mere contact with floodwater. (*See* Doc. 27 at 18, 27, 30).

The Court cannot accept Defendant's argument because there is simply no way to read these Sections as Defendant proposes. Rather than creating a categorical rule requiring a certain kind of proof to establish loss, these Sections specifically and permissively authorize FEMA to implement regulations by which claims will be adjusted and paid for damaged property. The Claims Manual is included among those regulations, *White Hall on MS River*, 2015 WL 1540436, at *2, and provides specific guidance for adjusting sheathing-related claims.

Areas in Accordance with the New National Flood Insurance Program (TB2) to provide communities enforcing their local floodplain management requirements with guidance on which building materials FEMA considers flood damage-resistant. **Using TB2, FEMA has developed the following guidance on the adjustment of claims for perimeter wall sheathing.**

A. Class 1 or 2 Sheathing

**When Class 1 or 2 sheathing material is damaged directly by contact with floodwaters, the material is not salvageable.** It is not necessary for a qualified professional, such as an engineer, to document the flooded sheathing material's condition. However, such professional services may be appropriate to investigate possible exclusions or to recommend methods of repair.

(Doc. 20-4 at 12 (emphasis added)).

In turn, FEMA's Technical Bulletin 2 (TB2) explains that Class 1 *and* Class 2 fiberboard sheathing each "**cannot survive the wetting and drying associated with floods**." (Doc. 20-15 at 6 (emphasis added)).

Plaintiff's sheathing is Class 1 fiberboard. Reading the SFIP *in pari materia* with the NFIP Claims Manual, the Court concludes that compensable loss to Class 1 sheathing is established upon proof of "mere contact" with floodwater. Indeed, this is the only logical interpretation.

First, this interpretation is *consistent* with the SFIP's requirement that the insured show "evidence of physical changes to the property" in order to establish flood damage. Unavoidably, a change from dry to wet *is* a physical change.

Second, per the Claims Manual, compensable loss upon proof of "mere contact" with floodwater is specifically limited to Class 1 and Class 2 building materials, thus *avoiding* the absurd result that would follow from allowing recovery for *any* property contacted by floodwater, regardless of its resistance to inundation.

18

Finally, Defendant's contrary interpretation—that compensable loss to Class 1 sheathing requires proof of obvious and apparent damage—is completely at odds with FEMA's guidance. After all, *if* Class 1 building materials are "[n]ot resistant" to water of any kind and "cannot survive the wetting and drying associated with floods," as stated in TB2,[11] *then*, necessarily, Class 1 fiberboard sheathing "is damaged directly by contact with floodwaters" and "is not salvageable," as stated in the Claims Manual. Again, the Claims Manual is incorporated among FEMA's regulations, and cannot be discarded simply because Defendant now finds its guidance inconvenient, and beneficial to Plaintiff.

In sum, reading the SFIP *in pari materia* with the Claims Manual and TB2 establishes that Class 1 fiberboard sheathing is compensable upon proof that it came into contact with floodwater. Here, the summary judgment evidence establishes that Plaintiff's home was inundated with more than two feet of floodwater for multiple days, removing any doubt that floodwater contacted her sheathing. Thus, under the SFIP, Plaintiff is entitled to reimbursement for her fiberboard sheathing, *provided* she has otherwise satisfied the SFIP's requirements for additional payment (discussed below).

---

[11] In another reversal, Defendant contends that the Court should disregard TB2 because the Claims Manual does not state "that it is incorporating and/or adopting anything specifically at all from TB2." (Doc. 27 at 34). This argument is borderline specious, even putting aside Defendant's about-face. The Claims Manual expressly states that its "guidance on the adjustment of claims for perimeter wall sheathing" was developed "[u]sing TB2." (Doc. 20-4 at 12). Further, it is impossible to read the Claims Manual without reference to TB2 because the Claim's Manual's guidance reflects that sheathing comes in five distinct classes, but does not explain how these classes are determined. TB2 fills the gap. Clearly, FEMA intended the Claims Manual to incorporate TB2.

**4. Under the SFIP, Defendant improperly denied Plaintiff's request for additional reimbursement based on Plaintiff's failure to provide proof of how she spent the initial payment**

The next issue is whether Defendant improperly denied Plaintiff's claim to additional reimbursement based on Plaintiff's failure to submit proof of how she spent her initial payment. Answering this question requires an analysis of the SFIP's Replacement Cost Loss Settlement Clause, which may be found at Article VII(V)(2).

## a. Disputed SFIP Provision

The SFIP's Replacement Cost Loss Settlement Clause states:

2. Replacement Cost Loss Settlement

The following loss settlement conditions apply to a single-family dwelling described in V.1.a. above:

a. We will pay to repair or replace the damaged dwelling after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

(1) The building limit of liability shown on your Declarations Page;

(2) The replacement cost of that part of the dwelling damaged, with materials of like kind and quality and for like use; or

(3) The necessary amount actually spent to repair or replace the damaged part of the dwelling for like use.

## b. Arguments and analysis

Plaintiff asserts that the SFIP's Replacement Cost Loss Settlement Clause is ambiguous regarding whether an insured must prove how she spent her initial payment before recovering a supplemental reimbursement for unrepaired items. And, again, Plaintiff contends that the Claims Manual provides express guidance, stating that an insured "who has not completed repairs and is requesting additional payment is not required to prove how they spent funds previously paid on the same claim."

20

(Doc. 20-4 at 15).

Defendant's response is perfunctory, and difficult to discern. First, Defendant asserts that "[t]he Court need not address this argument based on the numerous genuine issues precluding summary judgment explained above." (Doc. 27 at 37). Obviously, this argument fails in light of the preceding analysis.

Next, Defendant contends that Plaintiff has not shown that her claim for supplemental compensation was denied "because of a lack of incurred costs." (Doc. 27 at 38). In the same breath, however, Defendant concedes that its September 3, 2017 denial letter demanded "copies of paid invoices, receipts, cancelled checks, credit card receipts for actual incurred costs for repairs." (*Id.* at 37-38). Defendant makes no attempt to reconcile these contradictory statements.

Finally, and in any event, Defendant asserts that the Replacement Cost Loss Settlement Clause is not ambiguous and allows Defendant to request proof of incurred costs before paying additional reimbursements, reflecting the "general insurance principle … that the policyholder is entitled to indemnity and cannot profit from a loss." (Doc. 27 at 39).

Here, again, the SFIP *is* ambiguous in the context of this dispute, though not for the reasons stated in Plaintiff's Motion. Quite simply, the SFIP's Replacement Cost Loss Settlement clause does not address this situation, where the insured has received an initial payment, repaired her home with the proceeds, and seeks an additional reimbursement for damaged items that have not been repaired.

And, again, reading the SFIP *in pari materia* with the Claims Manual clears

21

up the confusion. Section 43 of the Claims Manual is devoted entirely to "Requests for Additional Payment." (Doc. 20-4 at 15). Subsection 43.1 specifically addresses "Handling of Requests for Additional Payment Prior to Repairs," and states:

> **A policyholder who has not completed repairs and is requesting additional payment is not required to prove how they spent funds previously paid on the same claim. If a policyholder has not completed the repair or replacement of items damaged by a covered loss, NFIP insurers may not deny requests for additional payment solely because the policyholder did not provide evidence that all amounts previously paid on the claim, plus the value of the deductible(s) and any applicable physical depreciation, were spent to repair or replace covered flood damage.** NFIP insurers must evaluate such requests for additional payments using the same methods, procedures, and requirements used to evaluate the initial requests for payment.

(*Id.* (emphasis added)).

The Claims Manual removes any ambiguity regarding whether an insurer may require proof of how a prior reimbursement was spent before providing an additional payment to reimburse an unrepaired item: the insured "is not required to prove how they spent funds previously paid on the same claim," and the insurer "may not deny requests for additional payment solely because the policyholder did not provide evidence that all amounts previously paid on the claim … were spent to repair or replace covered flood damage."

All that remains is to apply this interpretation to the facts of the case. Here, the summary judgment evidence establishes that Plaintiff's fiberboard sheathing was damaged by contact with floodwater, yet was not included among the items reimbursed in Defendant's initial November 2016 payment. Thereafter, in July 2017, Plaintiff submitted a supplemental Proof of Loss, supported by a finely detailed, 45-

22

page line-item estimate that included costs corresponding to removal and replacement of exterior sheathing. (*See* Doc. 27-13 at pp. 2, 39, 41). In September 2017, Defendant denied payment citing "no documentation to support any further payment" (Doc. 20-13 at p. 1), and now admits that the basis of its denial was Plaintiff's failure to provide evidence of "actual incurred costs for repairs." (Doc. 27 at 37-38). To this day, Defendant has not reimbursed Plaintiff for sheathing, and Plaintiff has not made any repairs to her sheathing.

On this record, the Court concludes that Defendant improperly denied Plaintiff's claim for reimbursement of sheathing, in contradiction of its obligations set forth in the SFIP and the Claims Manual. Here, again, Plaintiff is entitled to judgment in her favor.

## III.    CONCLUSION

Having shown that there is no genuine dispute as to any material fact and that Plaintiff is entitled to judgment as a matter of law,

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 20) is **GRANTED**, and that Plaintiff is entitled to recover from Defendant the replacement cost value of her exterior sheathing.

Baton Rouge, Louisiana, this 21st day of January, 2021

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**